**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

ANITA LOUISE VIGIL,

        Plaintiff,

v.                                          CIV. NO. 13-905-GBW

CAROLYN W. COLVIN,
*Acting Commissioner of the*
*Social Security Administration*,

        Defendant.

## ORDER DENYING MOTION TO REMAND TO AGENCY

This matter comes before the Court on Plaintiff's Motion to Remand to Agency for Rehearing, with Supporting Memorandum. *Doc. 24.* Having reviewed the briefing (*docs. 24, 27, & 28*), the record, and the applicable law, the Court will DENY Plaintiff's motion and DISMISS this action.

### I.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence," and (2) comports with the proper legal standards. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991). "In reviewing the ALJ's decision, 'we neither reweigh the evidence nor substitute our judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

Substantial evidence is "more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias,* 933 F.3d at 800. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id*. at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.   **BACKGROUND**

**A. Procedural History**

Plaintiff filed an application for disability benefits under Title II on December 10, 2009, alleging a disability onset date of December 26, 2008. AR at 12. Her claim was initially denied on April 20, 2010, and after reconsideration on July 16, 2010. *Id.* Upon Plaintiff's request, a hearing was held on March 28, 2012, in front of Administrative Law Judge (ALJ) Michelle K. Lindsay. *Id.* A vocational expert (VE), Charles H. Mcbee, also attended the hearing. *Id.* On June 1, 2012, the ALJ issued an opinion finding that Plaintiff was not entitled to benefits. AR at 23. The Social Security Administration (SSA) Appeals Council denied Plaintiff's request for review of the ALJ's decision on August 9, 2013. AR

at 1.  Plaintiff now moves for this Court to remand the ALJ's decision.

### B.  Plaintiff's Medical History

Plaintiff, who was 45 years old at the time of her alleged disability onset date, filed an application for disability benefits alleging the following medical conditions: migraines, shoulder problems, a neck and shoulder injury, diabetes, and high blood pressure.  AR at 183.  The ALJ found Plaintiff's severe impairments to be "superior and posterior labral tears, and supraspinatus tendinopathy of the right shoulder, myofacial cervicalgia, asthma, diabetes, and migraine headaches."  AR at 14.  Because Plaintiff's arguments center on whether the ALJ appropriately considered her migraine headaches (*see docs. 24 & 28*), the Court's written review of the medical record will focus on Plaintiff's history of that particular impairment.

The record reflects that Plaintiff has complained of headaches as far back as March 25, 2006, when G. S. Pellegrino, a certified myofascial trigger point specialist (CMTPT), recorded that Plaintiff had suffered from a "[f]ull blown HA [headache] Sunday w/ vomiting, etc."  AR at 466.  The record further reflects that Plaintiff has complained of headaches or migraines on a regular basis since that time.  For example, on thirty-seven (37) separate occasions, between January 15, 2008, and November 17, 2009, a period of nearly two years, Plaintiff reported that she was then suffering from or had been suffering from headaches or migraines.  AR at 278-615.  In a "Headache Questionnaire" completed on January 14, 2010, Plaintiff reported suffering from daily headaches.  AR at

193.  At her hearing on March 28, 2012, however, Plaintiff testified, "I get at least about three [migraines] a week."  AR at 39.  Throughout the record, Plaintiff's pain appears to have varied in frequency and intensity.  *See, e.g.,* AR at 332, 387, 397, 401 (headaches); AR at 286 (less intense headaches); AR at 278, 290, 390, 528, 552 (migraines).

The root medical cause of Plaintiff's headaches and migraines is unknown.  In May 2009, a consulting physician for Plaintiff's worker's compensation insurance, who reviewed Plaintiff's medical records from 1995 to May 2009, concluded that Plaintiff's migraine headaches were not related to her May 5, 1995 shoulder injury.  AR at 318.  On November 3, 2009, however, Samuel K. Tabet, M.D., of New Mexico Orthopaedics stated:

> In terms of the shoulder, it is hard to put all of this into one big picture, relating it to her migraine headaches and neck.  Certainly it could be related . . . We discussed the fact that I think these headaches probably should be controlled.  I would like to see that and see if it has any effect on her shoulder. . . I will see her again after she has had more of a workup for this headache problem.

AR at 510.  Dr. Tabet intended on having Plaintiff see a neurologist about the source of her headaches.  AR at 510.  On February 18, 2010, Emil S. Cheng, M.D., reported that "Dr. Tabet had suggested that she see neurology, however, this has been denied by work comp."  AR at 609.  Thus, physicians who have treated Plaintiff or reviewed her medical records have not conclusively discovered the source of Plaintiff's migraines.  Plaintiff, however, testified that her migraines were related to her shoulder injury, but can be triggered by her C1 vertebrae being out of place, certain smells, depression, stress, or anxiety, and focusing on an object for too long such as when reading, watching television,

or staring at a computer screen for more than ten minutes.  AR at 38, 40, 49.

Plaintiff has tried a number of medications and techniques to alleviate her

headaches, with minimal results.  At the hearing, Plaintiff stated, "[U]sually when I get

the migraines it puts me out.  It's like I, I have to be in a dark room . . . They can last all

day, just depending how, how I wake up and how I feel.  It can—sometimes I can take

Excedrin Migraine and it kind of helps with it.  And sometimes nothing helps but sitting

in a dark room."  AR at 39.  In addition to taking Excedrin Migraine and other over the

counter pain medications such as Tylenol and Ibuprofen, Plaintiff has been prescribed

Topamax, Imitrex, Relpax, and Gabapentin.  AR at 39-40, 187.  Although Topamax,

Imitrex, and Relpax did not provide relief, Preston Matthews, D.O., reported in April

2012 that "gabapentin has reduced her headaches from daily to 2-3 times per week," and

that Plaintiff is "[c]urrently using OTC Excedrin migraine with fair results."  AR at 686.

Plaintiff has taken Gabapentin since before June 25, 2009, AR at 514, and was taking it at

the time of the hearing, AR at 39.  Plaintiff also reported currently taking Excedrin

Migraine.  AR at 40.

Briefly stated, Plaintiff has reported headaches that have various triggers, degrees

of pain, frequencies, and responsiveness to treatment.

In considering Plaintiff's application for disability benefits, on April 19, 2010,

Samuel Pallin, M.D., concluded that Plaintiff's headaches did not prevent her from

working or qualify her for disability benefits.  He found that her "[h]eadache questionaire

[sic] is not specific for migraine syndrome," and that Plaintiff's description of her headaches in various medical records "fails to describe aura, sensory phenomina, post ictal sx etc." AR at 601. Aura is defined as "[s]ubjective symptoms at the onset of a migraine headache," such as an odor or gleam of light. Stedman's Medical Dictionary 169 (Marjory Spraycar et al. eds., 26th ed. 1995) [hereinafter Stedman's]. Seemingly, by "post ictal sx," Dr. Pallin meant symptoms that occur after a migraine. *Postictal Definition*, Merriam-Webster.com, http://www.merriam-webster.com/medical/postictal (last accessed 11/14/14) (defining postictal as "occurring after a sudden attack (as of epilepsy)"). On July 16, 2010, Lucy Sauer, M.D., reviewed "all of the available medical information," and affirmed Dr. Pallin's assessment. AR at 639. Thus, based in part on Dr. Pallin's and Dr. Sauer's opinions, the Social Security Administration found that Plaintiff had not sufficiently demonstrated that her headaches, migraines or otherwise, precluded her from working. AR at 56, 57.

On May 18, 2010, Dr. Cheng recommended referring Plaintiff to a pain clinic. AR at 610. The record reflects that she began being treated by Anthony Reeve, M.D., of Industrial Rehabilitation Clinics, P.C. (IRC), at least as early as October 25, 2010, and continued seeing him through March 9, 2012. AR at 644-730. On March 9, 2012, records from IRC state that Plaintiff was there to follow up and refill her medication, which she had tolerated "well" and without side effects. AR at 647. The report also states, "At this time, the patient's pain is controlled by current intervention." AR at 647. On that same

day, Dr. Reeve also completed a Medical Source Statement in which he outlined

Plaintiff's physical limitations.  AR at 640-642.  Dr. Reeve did not, however, explain why

he had provided such limitations and there is nothing in the record to suggest that those

limitations were based on Plaintiff's migraines.

On March 26, 2012, Carol McGlauchlin, DOM, reported that Plaintiff's migraines

had caused her to miss appointments to treat "primarily for shoulder, upper back and

neck pain," on 11 separate occasions between November 11, 2011, and March 21, 2012.

### C.  The ALJ's Decision

On April 12, 2012, the ALJ issued a decision in which she found Plaintiff not

disabled.  AR 26.  For purposes of Social Security disability insurance benefits, an

individual is disabled when unable "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To determine whether a

person satisfies these criteria, the SSA has developed a five-step test.  *See* 20 C.F.R. §

416.920.   If the Commissioner is able to determine whether an individual is disabled at

one step, he does not go on to the next step.  *Id.* § 416.920(a)(4).

At the first four steps of the analysis, the claimant has the burden to show that: (1)

he is not engaged in "substantial gainful activity"; (2) that he has a "severe medically

determinable . . . impairment . . . or a combination of impairments" that has lasted or is

expected to last for at least one year; and either (3) that his impairment(s) meet or equal one of the "Listings" of presumptively disabling impairments; or (4) that he is unable to perform his "past relevant work."  416.920(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases.  *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).  First, the ALJ determines the claimant's residual functional capacity (RFC) in light of "all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3).  A claimant's RFC is "the most [he] can still do despite [his physical and mental] limitations."  *Id*. § 416.945(a)(1).  Second, the ALJ determines the physical and mental demands of claimant's past work.  "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'"  *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling 82-62 (1982)).  Third, the ALJ determines whether, in light of his RFC, the claimant is capable of meeting those demands.  *Id*. at 1023, 1025.

If the ALJ determines the claimant cannot engage in past relevant work, she will proceed to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering his residual functional capacity, age, education, and work experience.  *Grogan*, 399 F.3d at 1257.

Here, at steps one, two, and three, respectively, the ALJ found that Plaintiff had

not engaged in substantially gainful activity since her alleged disability onset date, that some of her impairments were severe (including "superior and posterior labral tears and supraspinatus tendinopathy of the right shoulder, myofacial cervicalgia, asthma, diabetes, and migraine headaches"), but that these impairments did not meet or equal the severity of a listed impairment.  AR at 14-17.  The ALJ also found Plaintiff's alleged mental impairments, depression and anxiety, to be non-severe.  AR at 14.  At the fourth step, the ALJ calculated Plaintiff's RFC and found that she was capable, with some additional limitations, of performing "light work," but not capable of performing her "past relevant work" as a retail supervisor.   AR at 21.  At the fifth and final step, based on the vocational expert's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff was capable of performing other available work, namely as a photocopy machine operator, an inspector/handpackager, or a palletizer.  AR at 22-23.  In making the above determinations, the ALJ found that Plaintiff's migraines would not cause her to miss more than one day per month, which the VE testified would likely preclude her from working.  AR at 53-54. The ALJ denied Plaintiff's application for benefits accordingly.

### III.   ANALYSIS

This case concerns whether the ALJ appropriately considered Plaintiff's migraines both at step three and four of the five-step analysis.  Plaintiff argues that "the ALJ erred by failing to consider whether the migraines are the functional equivalent of a listed

impairment, failed to include the limitations caused by the severe impairment of migraine headaches in her RFC finding, and failed to consider the VE testimony regarding the inability to work with the functional limitations caused by the migraines." *Doc. 24* at 10.

The Commissioner responds that Plaintiff's migraines do not rise to the level of a listed impairment. *Doc. 27* at 8. The Commissioner further argues that the ALJ did consider Plaintiff's migraines in assessing Plaintiff's RFC, but determined that she retained the ability to perform light work notwithstanding this impairment. *Id.* Finally, the Commissioner asserts that the ALJ did not err in discounting the VE's testimony that repeated absences would preclude an individual from maintaining a job because the ALJ appropriately found that Plaintiff's headaches would not cause her to miss work that frequently. *Doc. 27* at 11. Because the ALJ's opinion applies the appropriate legal standards and is supported by substantial evidence, the Court will deny Plaintiff's motion.

## A. **The ALJ's Step Three Analysis is Without Reversible Error.**

At step three of the disability determination process, the ALJ is to determine whether a claimant's impairment—or combination of impairments—meets or equals a listed impairment. If so, the inquiry ends, and the claimant is entitled to benefits. 20 C.F.R. § 404.1520(d). Plaintiff argues that "[n]either the ALJ, nor the state agency physicians, nor Ms. Vigil's prior non-attorney representative seemed to consider whether the migraine headaches were the functional equivalent of the neurological listings for epilepsy . . ."

*Doc. 24* at 10.  In her reply, Plaintiff further avers that the ALJ impermissibly adopted "the

step 3 findings of the nonexamining state agency doctors."  *Doc. 28* at 2.

This argument is unavailing.  To begin, Plaintiff carries the burden of

demonstrating that her impairment is equal in severity to a listed impairment. *Grogan*,

399 F.3d at 1261 ("The claimant bears the burden of establishing a prima facie case of

disability at steps one through four.").  There is nothing in the record to suggest that

Plaintiff made any such argument or put forth any evidence to support this assertion.

Thus, Plaintiff cannot now, on appeal of the ALJ's decision, argue that the SSA failed to

consider whether Plaintiff's migraines meet or equal a listed impairment.  Plaintiff seems

to acknowledge as much by noting that, "[i]f this case is remanded for the [alleged errors

elsewhere in Plaintiff's brief], [Plaintiff] will present this argument to the ALJ at her next

hearing."  *Doc. 24* at 7.

Moreover, the issue of whether an impairment or group of impairments meets or

equals the severity of a listed impairment is essentially a medical question, even if the

ALJ renders the ultimate conclusion. *Policy Interpretation Ruling Titles II & XVI:*

*Consideration of Admin. Findings of Fact by State Agency Med. & Psychological Consultants &*

*Other Program Physicians & Psychologists at the Admin. Law Judge & Appeals Council Levels of*

*Administrative Review; Medical Equivalence*, SSR 96-6p, 1996 WL 374180, (July 2, 1996).  As

the SSA has explained, while an ALJ "is not bound by a finding by a State agency medical

or psychological consultant . . . as to whether an individual's impairment(s) is equivalent

in severity to any [listed impairment . . ., longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the [ALJ] must be received into the record as expert opinion and given appropriate weight." *Id.* at *3. Thus, the ALJ's reliance on the State agency medical consultant's opinion in finding that Plaintiff's impairment did not meet or equal a listed impairment was proper, and the medical consultant's opinion, especially in the absence of any contradictory medical opinions, amounted to substantial evidence supporting the ALJ's finding.

For the foregoing reasons, the Court concludes that the ALJ did not err at step three of the sequential analysis.

**B.  The ALJ's Analysis at Steps Four and Five are also Without Reversible Error.**

At step four, the ALJ is to make a residual functional capacity assessment and determine whether, based on that assessment, a claimant is capable of performing her past relevant work. Where, as here, a claimant is deemed incapable of performing past relevant work, the RFC assessment is also used at step five to determine whether a claimant is capable of performing other available work that exists in substantial numbers in the national economy. In determining a claimant's RFC, the ALJ must consider "the impact of [a claimant's] impairment(s) and any related symptoms, including pain . . . ." 20 C.F.R. § 416.929.

Plaintiff argues that the ALJ failed to consider her migraines and the pain they caused Plaintiff when she assigned an RFC to perform light work, especially given the VE's testimony regarding the acceptable number of absences.  *Doc. 24*, at 7-9.  The Commissioner responds that the ALJ recognized the impact of Plaintiff's migraines on her ability to work, but found her capable of performing light work nonetheless.  *Doc. 27*, at 8-10.  The Court agrees with the Commissioner and finds that the ALJ did not err in concluding that Plaintiff retained the ability to perform light work.

In evaluating the impact of subjective symptoms such as pain or fatigue on a claimant's RFC, the ALJ engages in a two-part process.  *Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996).  First, she determines whether "there are medical signs and laboratory findings demonstrating the existence of a medically determinable . . . impairment[] that could reasonably be expected to produce the symptoms."  SSR 96-7p at *1.  The ALJ must consider all of the medically determinable impairments in conjunction, and not simply those determined to be severe at step two.  *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).  Once the ALJ has assessed the existence of a medically determinable impairment, she then evaluates the claimant's credibility concerning "the intensity, persistence, and functionally limiting effects of the symptoms . . . ."  SSR 96-7p at *1.

Here, the ALJ found Plaintiff's medical impairments "could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC]."  AR at 18.  Though formulaically phrased, the ALJ recognized that Plaintiff suffers from pain that is caused by an objectively demonstrable impairment.   Next, however, the ALJ found that Plaintiff's pain and any other symptoms associated with her migraines did not prevent her from performing light work.   Thus, the critical question is whether the ALJ appropriately assessed Plaintiff's credibility with regard to her assertions of disabling pain.

Credibility determinations are within the province of the ALJ, and the Court should generally defer to the ALJ's credibility determinations.  *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1030 (10th Cir. 1994) (citing *Williams v. Bowen*, 844 F.2d 748, 755 (10th Cir. 1988)); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (citations omitted).  However, the ALJ's opinion must contain "specific reasons" for his credibility findings that are "closely and affirmatively linked" to evidence in the record.  *Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004).  Moreover, credibility determinations must be supported by substantial evidence.  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (citation omitted).

In evaluating the intensity and persistence of symptoms and their impact on a claimant's ability to work, the ALJ is to "consider all of the available evidence, including

[the claimant's] history, the signs and laboratory findings, and statements [by the claimant], [her] treating or nontreating source, or other persons about how [the claimant's] symptoms affect [her]."  20 C.F.R. § 416.929(c)(1).  This includes medical opinions and objective medical evidence.  ALJs must also consider the following factors in evaluating a claimant's symptoms:

(i)     A claimant's daily activities;
(ii)    The location, duration, frequency, and intensity of pain or other symptoms;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication a claimant takes or has taken to alleviate pain or other symptoms;
(v)     Treatment, other than medication, a claimant receives or has received to relieve pain or other symptoms;
(vi)    Any measures a claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii)   Other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms.

*Id.*  Stated briefly, ALJs are to consider a claimant's statements about pain in relation to the objective medical evidence and other evidence, as well as inconsistencies and conflicts between a claimant's statements about pain and the rest of the evidence.  20 C.F.R. § 416.929(c)(4).  "In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true."  SSR 96-7p at *4.

Here, the ALJ properly found that Plaintiff's statements about her inability to work could not be accepted as true.  AR at 21.  Regarding Plaintiff's credibility, the ALJ noted: (1) Plaintiff "continued working for years after her initial injury and left her job because

the store closed rather than because of her disability," AR at 21; (2) her "credibility is lessened by her inconsistent statements regarding the side effects of her medications and in her daily activities . . ." AR at 21; and (3) "she collected unemployment benefits and was searching for work, while at the same time maintaining that she is unable work," AR at 21.  In light of this reasoning, and its factual support in the record, the ALJ applied the appropriate legal standards and supported her decision with substantial evidence.  She, therefore, committed no legal error.

"One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."  SSR 96-7p at *5.  Here, as the ALJ points out, Plaintiff's allegations of disabling pain are severely undermined by their inconsistency with her daily activities.  *See* AR at 18-21.  Plaintiff asserts, and at least one physician believes, that Plaintiff's headaches and migraines are or may be associated with her May 1995 shoulder injury, which means they would have developed as far back as 1995.  AR at 38, 510.  The record reflects that she complained of a severe headache at least as far back as March 2006, and she repeatedly complained of headaches and migraines prior to her alleged disability onset date of December 26, 2008.  *See* AR at 387-553 (On at least 26 separate occasions between March 2006 and her alleged disability onset date, Plaintiff complained of head pain ranging from a headache that was less intense than usual, AR at 453, to a bad migraine, AR at 390; 21 of these occasions occurred in 2008 alone).  Yet, as the ALJ points out, "she stopped working because her

store closed, rather than due to her disability."  AR at 18.   Thus, by Plaintiff's own

account, she frequently suffered from head pain before she stopped working, yet she

continued to work.  This evidence severely undermines Plaintiff's assertions regarding

her level of pain and, even standing alone, amounts to more than a scintilla.

Furthermore, Plaintiff was actively seeking work even after losing her job.  As the

ALJ points out, "she collected unemployment benefits and was searching for work, while

at the same time maintaining that she is unable work."  AR at 21.  At the hearing, Plaintiff

admitted, "I did attempt to find jobs while I was on unemployment, and I wasn't able to

find anything at that time."  AR at 37.  She approximated that she drew unemployment

benefits for two years.  AR at 48.  Assuming Plaintiff began receiving unemployment

benefits on the very day she lost her job, she would have been "attempt[ing] to find jobs"

through at least December 26, 2010.  Yet the record also reflects ongoing allegations of

head pain within the very same time frame.  Between January 8, 2009, and November 11,

2009, Plaintiff complained of headaches or migraines on 14 separate occasions.  AR at 278-

615.  She reported suffering from "more migraines" on January 8, 2009, AR at 545, and in

both June and November of that year, she reported suffering from daily migraines, AR at

529, 524.  The fact that Plaintiff actively sought employment while maintaining she

suffered from disabling pain not only further undermines her credibility, but also refutes

any potential argument that Plaintiff's pain dramatically increased post-employment

such that she would be unable to work during the two years after her alleged disability

onset date.  This evidence further impugns Plaintiff's credibility, and amounts to more

than a scintilla of evidence supporting the ALJ's credibility determination.  Accordingly,

the ALJ did not commit legal error in assigning Plaintiff the RFC that she did.

In arguing to the contrary, Plaintiff points to *Hayden v. Barnhart*, 374 F.3d 986 (10th

Cir. 2004), which held that an ALJ erred in making a credibility determination regarding a

claimant's statements of disabling pain where the ALJ did not give specific reasons

supported by the record for finding the claimant not credible and "fail[ed] to adequately

consider (or show [] that he ha[d] considered) the other required factors."  374 F.3d at 993-

94.  The ALJ in *Hayden* found the plaintiff's testimony about her condition inconsistent

with the medical evidence and noted that "[m]any records say claimant was doing well

until 3 weeks before the hearing."  *Id.*, at 922.  Upon review of the record, however, the

Tenth Circuit found that the plaintiff's statements were not inconsistent with the medical

evidence nor did the medical evidence support the ALJ's assertion that the plaintiff was

doing well until three weeks before the hearing.  *Id.*, at 993.  As a result, the Tenth Circuit

concluded that the ALJ's analysis amounted to legal error and was also not supported by

substantial evidence.  *Id.*, at 994.

Here, unlike in Hayden, the ALJ listed the factors to be considered, based her

credibility determination on appropriate considerations, and supported her

determination with substantial evidence in the record.  Most importantly, whereas in

*Hayden* the plaintiff's statements and the record did not betray inconsistencies, here, they most surely did.  Thus, Plaintiff's reliance on *Hayden* is unavailing.

**IV.**    C<small>ONCLUSION</small>

Plaintiff has not demonstrated that the ALJ committed reversible error in her analysis of Plaintiff's migraine headaches.  Therefore, Plaintiff's Motion to Reverse and Remand to Agency for Rehearing with Supporting Memorandum (*doc. 24*) is DENIED, and this action is DISMISSED.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**